UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GO ASK ANYONE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHRONICLE BOOKS, INC.,<br>MAURA WALTRIP,<br>CAMERON MOORE<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-11908-RWZ<br>)<br>)<br>)<br>)<br>)<br>) |

FILED
CLERKS OFFC.
2005 SEP 28 P 1:5!
DISTRICT C RT
DISTRICT OF M  S.

**GO ASK ANYONE, INC.'S MEMORANDUM IN
SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Plaintiff, Go Ask Anyone, Inc. ("Go Ask Anyone") is a small company run by one person. Go Ask Anyone develops card games which are designed to encourage fun and interesting conversations between family and friends. In 2003, Go Ask Anyone began market its card games under the registered trademarks and trade dress GO ASK ANYONE®, GO ASK YOUR FATHER®, GO ASK YOUR MOTHER®, GO ASK YOUR GRANDPARENT®, GO ASK YOUR TEENAGER®, and GO ASK YOUR GIRLFRIENDS® (hereinafter collectively referred to as the "GO ASK" marks). The cards are packaged in colorful boxes with the trademark, for example, GO ASK YOUR FATHER®, in a conversation bubble with an exclamation point creating a distinctive trade dress. The games are sold in national chains and independent bookstores in the United States, as well as Canada and the Bahamas. The product are also available on-line at Amazon.com.

1

In May 2005, Go Ask Anyone became aware that Chronicle Books, LLC ("Chronicle") San Francisco based publishing company, launched a product called ASK IT which purports to provide the same or similar conversation-sparking questions as the GO ASK games. The ASK IT game is packaged in a similar manner to the GO ASK products, with a conversation bubble in the packaging. In June 2005, Go Ask Anyone sent a cease and desist letter to Defendants pointing out the similarities between the GO ASK and ASK IT products, names and packaging. After a series of negotiations in July and August, Chronicle agreed to cease all promotion and further sales of the ASK IT decks in their current packaging. Representations were made by Chronicle that the contract between Waltrip, Moore and Chronicle would prevent the individual authors from promoting the product on their own. In return, Go Ask Anyone agreed not to pursue other remedies through a preliminary injunction.[1]

Despite Chronicle's representation that it would cease promotion and further sales of the ASK IT decks in the original infringing packaging, it has not done so. Instead, Defendants have embarked on a national campaign to publicize the ASK IT decks including a promotion in the national magazine "O – The Oprah Magazine" in the September, 2005 issue; and on the Amazon.com and Target.com web sites. The promotion in "O - The Oprah Magazine" specifically directs potential purchasers to contact Chronicle through www.chroniclebooks.com to order the product.

Chronicle misrepresented its intentions to cease promotion and sales of the ASK IT decks with the intent to fraudulently defer Go Ask Anyone from seeking an injunction, the success of which would have curtailed the national promotion of ASK IT in "O - The Oprah Magazine."

---

[1] Go Ask Anyone contends that the term "ASK IT" is an infringement on "GO ASK." Chronicle represented that might repackage the product and continue to sell. However, because Go Ask Anyone is a small company with limited resources, it made the decision to wait and see if Chronicle decided to re-design and re-issue rather than seeking an injunction on the use of the name prospectively.

2

The ASK IT product in "O - The Oprah Magazine" is in the exact same packaging and is the exact same product that Chronicle agreed to stop promoting and selling. Clearly any injunction obtained in August or earlier would have stopped the presses on the "O" publication and promotion. Chronicle appears to have taken advantage of the fact that Go Ask Anyone is a small company and hedged their bets that it would not be able to sustain a legal battle once the promotion had already occurred. Independent of the failure of Chronicle to abide by the cease and desist, the ASK IT product in and of itself infringes on the trademark rights of Go Ask Anyone, and Defendants have entered the marketplace with knowledge of a prior user.

Defendants have knowingly and willfully infringed on the GO ASK marks and trade dress. As a result, Go Ask Anyone seeks an injunction prohibiting the sale and promotion of ASK IT in any form; the recall of remaining products from all distributors and retail outlets, costs, attorneys' fees and other relief articulated in the prayer for relief set out in the motion. This conduct of a knowing, willful violation clearly rises to the level of conduct outlined in the Lanham Act required for recovery of attorneys' fees.

## II. FACTS

**A.   Description of the Products/Marks**

    **1.   Go Ask Anyone/GO ASK Mark.**

Go Ask Anyone is a company that specializes in card games designed to spark fun and interesting conversations between family members and friends. (Verified Complaint, ¶8). Go Ask Anyone has developed an entire line of such card games, including GO ASK YOUR FATHER®, GO ASK YOUR MOTHER®, GO ASK YOUR GRANDPARENT®, GO ASK YOUR TEENAGER®, GO ASK ANYONE® and GO ASK YOUR GIRLFRIENDS®. (Verified Complaint, ¶9). Each of these are Federally registered trademarks. (Verified Complaint, ¶10,

3

Exhibit 1). In addition, Go Ask Anyone is in the process of expanding its line of conversation card games with Go Ask Your Teacher, Go Ask Your Friends, Go Ask a Veteran, Go Ask Your Spouse, Go Ask Your Fiance and Go Ask Your Date, as well as other related products. (Verified Complaint, ¶11). The Go Ask Anyone card games are packaged in colorful boxes, with the appropriate trademark, for example, "Go Ask Your Father," in a conversation "bubble," with an exclamation point, creating a distinctive and consistent trade dress. (Verified Complaint, ¶14 Ex. 2).

Go Ask Anyone named its company and its conversation card games in 2003. (Verified Complaint, ¶12). Since 2003, Go Ask Anyone has continuously used the GO ASK marks in interstate commerce to identify its conversation card games and to distinguish its games from products made and sold by others. (Verified Complaint, ¶13). Among other things, Go Ask Anyone displays the GO ASK marks on the products and packaging, as well as on marketing materials, advertising and displays for the products. It has also prominently displayed the GO ASK marks throughout its Web site at www.GoAskAnyone.com. This Web Site provides detailed information about its products. (Verified Complaint, ¶¶15, 16, Exs. 2, 3, 4).

GO ASK ANYONE is a relatively new small business run solely by Maura Cassidy.[2] (Verified Complaint, ¶12). Go Ask Anyone spends approximately $25,000.00 a year marketing its products, which is roughly half of its entire operating budget. (Verified Complaint, ¶17). The GO ASK card games are available in approximately four hundred (400) stores in forty-nine (49) states, Canada, and the Bahamas, as well as online at amazon.com. (Verified Complaint, ¶18) Go Ask Anyone has also recently received interest from retailers in Australia, New Zealand and Europe. (Verified Complaint, ¶19). The GO ASK games have received recognition in the toy

---

[2] The Company does contract with marketing representatives to place the product in stores.

4

and game industry and have generated substantial goodwill within the industry in connection with the GO ASK marks. (Verified Complaint, ¶20). In 2004, GO ASK YOUR FATHER® won the Dr. Toy's award for Best Vacation Children's Product; and GO ASK YOUR FATHER®, GO ASK YOUR MOTHER®, GO ASK YOUR TEENAGER® and GO ASK YOUR GRANDPARENT® have all won Seal of Approval Awards from the National Parenting Center as well as awards from iParenting Media Center. (Verified Complaint, ¶21, Ex. 5).

Go Ask Anyone has spent considerable time and money registering and protecting its trademarks. The GO ASK marks were all Federally Registered with the United States Patent and Trademark Office (USPTO) in 2004. (Verified Complaint, ¶10, Ex. 1). In addition, the GO ASK trade dress is distinctive and consistent for the entire line of GO ASK games, and has acquired secondary meaning throughout the industry and with consumers through continuous use in commerce and the recognition the games have received. (Verified Complaint, ¶22). Consumers have come to associate the GO ASK marks and trade dress with the high quality conversation cards that Go Ask Anyone sells throughout the United States and other locations (Verified Complaint, ¶23).

### 2. **Chronicle Books, LLC, Maura Waltrip & Cameron Moore/ASK IT**

Chronicle Books, LLC ("Chronicle") is a publishing company. Maura Waltrip and Cameron Moore are the individuals who claim to have developed the ASK IT game (the "Authors"). (Verified Complaint, ¶¶2-4).

Defendants have created a product identical to the GO ASK card games called ASK IT (Verified Complaint, ¶27, Ex. 6). It appears that the product was launched sometime in 2005. (Verified Complaint, ¶26). Similarities with the GO ASK games occur in the packaging, name, theme, questions and market of the ASK IT game. (Verified Complaint, ¶¶28-29, Exs. 7-8).

(a)  **Name**

GO ASK and ASK IT are substantially similar names for substantially similar products.

(b)  **Theme**

According to the Chronicle Web site, the ASK IT game contains cards with questions designed to "stimulate conversation between children, parents, grandparents, teachers and friends." (Verified Complaint, ¶¶27-28, Ex. 7). The tag line for the ASK IT game, also as seen on the Chronicle Web site, is "50 Fun Questions to Get Families Talking." (Verified Complaint ¶27, Ex. 6).

(c)  **Packaging**

The packaging for the ASK IT game is very similar to the GO ASK packaging. The ASK IT packaging is brightly colored, and the ASK IT mark appears on the packaging in a conversation bubble with an exclamation point, like the GO ASK packaging. (Verified Complaint, ¶29, Ex. 8).

(d)  **Questions**

Many of the questions in the ASK IT deck are the same, or substantially similar to those used by GO ASK, the first to place the games in the marketplace. (Verified Complaint, ¶28, Ex. 7). For example:

| GO ASK Deck | ASK IT deck |
|---|---|
| Who was your favorite teacher? Least favorite? | What teacher had the biggest impact on you? How? |
| What major weather storms have you experienced in your lifetime? | Have you ever been caught in a big storm? What happened? Where were you? |
| Did you have a nickname as a kid? If not, did you want one? | Have you ever had any nicknames? Which ones did you like? Which did you dislike? |

6

For examples of other similar questions, *see* Verified Complaint, ¶28, Ex. 7.

### (e) **Product Market**

The markets for the GO ASK and ASK IT products are similar. Consumers are able to purchase the ASK IT game through Chroniclebooks.com, Amazon.com and Target.com, as well as retail book store locations in Massachusetts and other states. (Verified Complaint, ¶30, Ex. 6, 8 and 9).

### B. **Chronicle's Agreement to Cease Promotion and Sales of ASK IT**

When Go Ask Anyone became aware of Defendant's product, it wrote to Chronicle and the Authors on June 23, 2005 and requested that Chronicle contact Go Ask Anyone to discuss how the parties might ensure that no confusion or infringement would occur with the GO ASK and ASK IT products. (Verified Complaint, ¶31; Ex. 11). Chronicle finally responded to Go Ask Anyone's letter on July 18, 2005. Chronicle proposed that it would re-design the packaging of the deck if Go Ask Anyone would agree to allow Chronicle to sell all of the remaining inventory. (Verified Complaint, ¶32, Ex. 12). Chronicle represented that 3500 decks had been sold and 6500 remained in inventory. (Verified Complaint, ¶34). Go Ask Anyone did not want the remaining inventory to go into the marketplace. (Verified Complaint, ¶37). After a series of negotiations, Chronicle ultimately agreed to stop all promotion, distribution and sales of the remainder of its inventory of ASK IT decks. In exchange, GO ASK agreed not to file a Motion for Preliminary Injunction. (Verified Complaint, ¶¶35-38, Ex. 14).

Despite the representation that Chronicle would stop all promotion and sales of the ASK IT decks, Chronicle promoted the ASK IT decks in the September, 2005 issue of the nationally

recognized " O – The Oprah Magazine." Almost immediately, ASK IT sales rose on Amazon.com. (Verified Complaint, ¶¶43-45, Ex. 16).

The promotion in "O - The Oprah Magazine" displays the <u>exact</u> product which Chronicle agreed would not be <u>promoted or sold</u> and directs potential purchasers to www.chroniclebooks.com to buy the product. (Verified Complaint, Ex. 16). Around the same time, the ASK IT decks appeared on the first page of the Target.com Web site. (Verified Complaint, ¶¶47-48, Ex. 10). In a Web search prior to the cease and desist agreement, Target had not shown up as a Web site prominently displaying the ASK IT decks.

During the course of negotiations with ASK IT, Go Ask Anyone sought information on the number of chain stores that had purchased the ASK IT deck. This information was important to Go Ask Anyone in its decision to forego filing an injunction as chain stores are part of the major market for this type of product.[3] (Verified Complaint, ¶51). Go Ask Anyone was informed that only one chain store had purchased the product, and that the chain had purchased 300 decks. Now, however, the ASK IT decks are appearing on Amazon.com, at Target.com and at Borders Books. A copy of the ASK IT deck was purchased by Maura Cassidy at a Border's Bookstore at Downtown Crossing in Boston, Massachusetts. (Verified Complaint, ¶¶49-51, Ex. 9).

Go Ask Anyone's GO ASK games and Chronicle's ASK IT game are both advertised and sold in virtually the same markets. (Verified Complaint, ¶52). Both are conversation card games that are marketed to the average consumer, making confusion more likely than if the parties were offering expensive products to sophisticated consumers. (Verified Complaint, ¶53). Given the obvious similarities between the GO ASK and ASK IT marks, trade dress and the parties'

---

[3] If the majority of inventory had been distributed to chain stores, Go Ask Anyone would have brought an injunction seeking to prevent sale of any remaining items in the stores.

products, target markets and customers, Defendants' use of the name ASK IT is likely to cause confusion among customers. Defendants' should be enjoined from infringing on Go Ask Anyone's mark. Actual confusion of the products has occurred. Cassidy's sales representative Michael Penna reported that a customer at a major gift show in Seattle saw the GO ASK deck and commented that she had seen them in The Oprah Magazine (Penna Affidavit, ¶7). Maura Cassidy received a telephone call from someone excited that she had purchased one of Maura's decks only to find out that the friend had bought the ASK IT, not GO ASK deck. (Verified Complaint, ¶55).

### III. ARGUMENT

Defendants can twist and turn the breach of the agreement to cease and desist in any way they want. But, one thing will not change, that by the time the publicity came out in "O – The Oprah Magazine," Defendants were aware that there was a prior user of the trade dress and trademark in the stream of commerce.

Defendants intentionally infringed upon the GO ASK marks and falsely claimed they would cease and desist promoting and selling the ASK IT decks. Defendants should be enjoined from (i) promoting and selling the ASK IT decks in their current packaging; and using the ASK IT name in connection with any conversation decks. If the court finds that the packaging is infringing, but not the name, Defendants should be prevented from filling any orders received as a result of promotions based on the current packaging and must notify those customers that the product is not available.

A party is entitled to injunctive relief in a trademark case if it can show that (1) it is likely to succeed on the merits of its claims; (2) it will suffer irreparable injury if the injunction is not granted; (3) such inquiry outweighs the harm which the other party will suffer if the injunction is

9

not granted; and (4) the public interest will not be adversely affected by the granting of the injunction. *TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 544 (1st Cir 1996), *following remand*, 927 F. Supp. 528 (D. Mass. 1996).

A. **Go Ask Anyone Is Likely To Succeed On The Merits Of Its Claims.**

    1. **Chronicle's Use Of "ASK IT" Is Likely To Cause Confusion With the "G ) ASK" Trademarks Under The Lanham Act.**

To prevail on a trademark infringement and false designation of origin claim, the Cou must determine whether Go Ask Anyone (1) owns a protected mark; and (2) that Chronicle's of the mark is likely to cause confusion in the marketplace. *See Calamari Fisheries, Inc. v. T] Village Catch*, 698 F. Supp. 994, 1006 (D. Mass. 1998).[4]

    (a) **Go Ask Anyone Has Priority With Respect To The GO ASK Mark**

Exclusive rights in a trademark derive from priority of use. *Boston Athletic Associatio v. Sullivan*, 867 F.2d 22, 27 (1st Cir. 1989). Go Ask Anyone's priority use of the mark cannot challenged. Since 2003, Go Ask Anyone has used the GO ASK marks. (Verified Complaint, ¶13). In 2004, Go Ask Anyone was granted Federal registration of the multiple GO ASK mar. Further, Go Ask Anyone has priority of use in the packaging of the product which contains a conversation bubble with an exclamation point creating a distinctive and consistent trade dress Clearly, Go Ask Anyone owns a protected mark and the first proof of the test has been satisfie . In contrast, Chronicle has only used the ASK IT mark since sometime in 2005.

    (b) **GO ASK and ASK IT are Easily Confused.**

Once the determination has been made that a term is entitled to trademark protection, tl pivotal inquiry becomes whether the infringing mark is likely to cause consumer confusion. *Se*

---

[4] The trademark infringement discussion herein is focused primarily on the Lanham Act claim. "Because trademark infringement is defined in essentially the same terms under the Lanham Act and under Massachusetts l; [a plaintiff's] likelihood of success on the merits of any of the state claims will not be different enough to merit separate discussion." *Leejay, Inc. v. Bed Bath & Beyond, Inc.*, 942 F. Supp. 699, 701 n.2 (D.Mass. 1996).

10

*Boston Athletic Association v. Sullivan*, 867 F.2d 22, 28 (1st cir. 1989). In assessing likelihood of confusion the First Circuit has identified eight factors to be considered; no one factor is necessarily determinative. *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989). The eight factors are: (1) similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of plaintiff's mark. *Boston Athletic Ass'n*, 867 F.2d at 29; *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987).

    (i)    **Similarity of the Marks/Similarity of the Goods**

Marks may be recognized as similar based on their appearance, sound and meaning. *Calamari Fisheries*, 698 F. Supp. at 1009. The words "GO ASK" and "ASK IT" are similar in appearance, the only difference being the two-letter portion of the marks. Even when the GO ASK portion of the mark is paired with the different relationship indicator, for example, "Father," the marks still appear and sound very similar. Most importantly, the marks convey a similar meaning, or commercial impression. Both are commands, containing the key word, "Ask." *See, e.g., Banoff Ltd. v. Federated Dept. Stores*, 638 F. Supp. 652 (S.D.N.Y. 1986), aff'd in part, rev'd in part, remanded 841 F.2d 486 (2nd Cir. 1988) (BEE WEAR and BWEAR, both names for women's clothing held confusingly similar in both oral and overall impression).

A key inquiry for the similarity of the goods factor is the extent to which the parties' goods are related in the minds of the public. *Northern Light Technology, Inc. v. Northern Light Club*, 97 F. Supp. 2d 96, 120 (D. Mass. 2000), aff'd 235 F.3d 57 (1st Cir. 2001). There is a

strong likelihood of confusion where parties offer virtually the same goods. *Boston Athletic Ass'n,* 867 F.2d at 30.

In fact, the test is not whether the marks can be distinguished in a side-by-side comparison, but whether their overall commercial impression is sufficiently similar that confusion as to source is likely. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of the marks. *See Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106 (TTAB 1975). In this case, the parties directly compete for the same customers with identical or nearly identical goods. The products which Go Ask Anyone calls GO ASK YOUR FATHER, et al., are high quality, inclusive, well-thought-out conversation card games which have, in the two years they have been on the market, already received positive recognition from the toy and game industries. The Chronicle product called ASK IT is an identical product in an identical market; it too is a conversation card game. Chronicle's Web site describes the game as containing fifty questions "created to stimulate conversation between children, parents, grandparents, teachers and friends." The tag line for the Ask It game is "50 Fun Questions to Get Families Talking." (Verified Complaint, ¶22). These marks sound similar, create the same commercial impression with consumers, and are attached to similar products.

However, the court need not rely on the representation that the packaging and name of the ASK IT mark is causing confusion, there is actual evidence of that fact. After the "O - The Oprah Magazine" publication, a buyer approached Go Ask Anyone's representative at a Seattle gift show and commented on the publicity that Go Ask Anyone had received through "O - The Oprah Magazine" promotion. In addition, Maura Cassidy received a call from a friend who had purchased an ASK IT deck, thinking she was buying Go Ask Anyone's product. The packaging

12

and names of the products are similar and the similarity of the Marks and similarity of the Go ⋯ tests are satisfied.

### (ii) Relationship Between the Parties' Channels of Trade/Relationship Between Parties' Advertising/Class of Prospective Purchasers.

The channels of trade, advertising and prospective purchasers factors are interrelated a ⋯ under First Circuit law, are typically considered together. *See Equine Technologies, Inc. v. Equitechnology, Inc.*, 68 F. 3d 542, 544, 546 (1st Cir. 1995); *Boston Athletic Ass'n*, 867 F.2d a 30. Go Ask Anyone's GO ASK products and Chronicle's ASK IT are both advertised and sol ⋯ in virtually the same markets. Both are conversation card games that are marketed to the toy, game and gift industries for sale to the general public, as well as directly to the average consumer. (Verified Complaint, ¶24). Both are offered through Amazon.com as well as bookstores throughout the United States. The class of purchasers is therefore identical. In addition, because the two products are relatively inexpensive items sold to the average consun ⋯ there is a greater likelihood of confusion. As discussed above, even a buyer for a retailer has been confused by the presentation of two identical products with such similar names and overa ⋯ appearances. The purchase of either product is not necessarily one that a consumer will make with careful thought and deliberation, nor are such consumers necessarily sophisticated. Therefore, these factors weigh in favor of finding confusion and the issuance of a preliminary injunction.

### (iii) Evidence of actual confusion

To establish likelihood of success on the merits, it is not necessary to show actual confusion; but rather, all that is required is a likelihood of confusion. *Volkswagenwerk*, 814 F. ⋯ at 817. However, in this case, Go Ask Anyone is aware of two instances of actual confusion – one by a professional buyer who supplies products to retail stores; and one by a consumer.

(Verified Complaint, ¶55; Penna Affidavit ¶7). The GO ASK marks are distinctive marks and are Federally registered, therefore a presumption of validity of the marks is established. The GO ASK marks are suggestive as used in connection with the products. By choosing a similar name and packaging, Defendants have not only created a likelihood of confusion, but have created actual confusion between the two products.

### (iv) Defendant's Intent

Evidence of bad faith or intent to confuse consumers is not necessary to prevail in a trademark infringement case. *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir. 1998). Moreover, a finding of good faith is no defense if likelihood of confusion is established. *Aastra*, 89 F.3d at 11. Indeed, "[w]hen one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion." *Volkswagenwerk*, 814 F.2d at 817 (holding that defendants' use of "Beetle Barn" was confusingly similar to plaintiff's prior use of "Beetle," and defendants presented no evidence that they acted affirmatively to avoid confusion).

Even if, upon inauguration of the ASK IT games Defendants had no intention of infringing, as second-comer to the market, Defendants acted at their peril and had an affirmative duty to select and adopt a name that avoided a likelihood of confusion with the GO ASK marks, a prior user in the marketplace. Prior to Defendants' use of ASK IT in the market in which Plaintiffs and Defendants now conduct business as direct competitors, Go Ask Anyone had been using its GO ASK marks for almost two (2) years and had already received Federal registrations for all six of the marks. (Verified Complaint, ¶13).

Even if Defendants' initial use of the ASK IT name and packaging were innocent, the same cannot be said of the recent promotions. Chronicle's current actions are not consistent with those of an innocent infringer. Defendants were made aware at least as early as June 23, 2005

14

that the ASK IT name and packaging infringed upon the GO ASK products. In fact, Chronicle agreed not to promote or sell the ASK IT game in its current packaging. Yet, this is precisely what Chronicle has continued to do. They fraudulently agreed to stop promoting and selling the existing product; thereby de-railing the opportunity for an injunction to issue prior to the publicity blitz in the national "O – The Oprah Magazine." This troubling behavior after receiving actual notice of infringement suggests bad faith on Chronicle's part, and supports the issuance of an injunction against Chronicle in this case. *See Public Service Co. of New Mexico*, 36 F. Supp. 2d at 438 (bad faith intent indicated by defendant's continued use of its mark after plaintiff notified defendant of its trademark rights.)

Even if the packaging were to be changed in the future, the names "GO ASK" and "ASK IT" are confusingly similar. As of June 23, 2005, Defendants were aware of the similarity of the marks and any further use of the name ASK IT can only be considered an intentional violation of Go Ask Anyone's priority mark. There can be no other explanation for Chronicle selecting an almost-identical name for an identical product other than to intend to confuse the consumer and infringe on the goodwill currently attached to Go Ask Anyone's products. In addition, promoting the product in the "O – The Oprah Magazine" is an intent to further draw a connection between the GO ASK and ASK IT marks since Go Ask Anyone's Web site prominently announces that Maura Cassidy received her inspiration for the product from an Oprah Winfrey program discussing problems with family communications.

    (v)    **Strength of the Mark**

"Strong" marks are afforded greater protection than "weak" marks. *Volkswagenwerk*, 814 F.2d at 819. The strength of a mark is based on the length of time a mark has been used the

relative renown in the field, the strength of the mark in the plaintiff's field of business, and th plaintiff's action in promoting the mark. *Boston Athletic Ass'n*, 867 F.2d at 32.

The GO ASK marks have been in use in interstate commerce since 2003 and have garnered much recognition in the toy, game and gift world.

- In 2004, GO ASK YOUR FATHER® won the Dr. Toy Award for Best Vacation Children's Products. This Award is displayed on the Dr. Toy Web site at www.dtoy.org/2004.

- The National Parenting Center has granted its seal of approval to four of the GO ASK games. This Award is displayed on the National Parent Center Web site at www.tnpc.com.

- iParenting Media Center has bestowed awards on GO ASK YOUR FATHER®, GO A ⁚ YOUR MOTHER®, GO ASK YOUR TEENAGER®, and GO ASK YOUR GRANDPARENT®. These awards are displayed at www.iparentingmediaawards.cor

As this shows, in addition to Go Ask Anyone's promotion of its names, they are recognized as distinctive games in the toy and game world. As the GO ASK marks are all Federally registei there exists a presumption of the distinctiveness and validity of the marks.

### 2. Chronicle's Use Of the Mark "ASK IT" Is Likely To Cause Dilution Under M.G.L. c. 110B, §12.

Courts may enjoin a party from using a Mark when the " distinctive quality of the ma ⁚ will be diluted. M.G.L. c. 110B, §12 states that "Likelihood of injury to business reputation ⁚ of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion a: ⁚ the source of goods or services." *Great Scott Food Market, Inc. v. Sunderland Wonder, Inc.,* ⁚

16

Mass. 320, 325 (1965) (quoting *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2nd Cir. 192 )

(Hand, J.)):

> [I]t has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury even though the borrower does not tarnish it, or divert sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against identification of the two, it is unlawful.

If a mark is attached to a product which is sufficiently similar to create a risk of Trademark dilution then the injunction must be allowed. *Pignons v. Polaroid*, 657 F.2d 482 ( Cir 1981); *Astra Pharm v. Beckham*, 718 F.2d 1201 (1983 1st cir); *PPG Industries v. Clinical Data*, 620 F. Fupp 604, 608 (D. Mass 1985). Defendants' use of the mark ASK IT is converge with the GO ASK mark and will dilute the distinctiveness established by the longer-used GO ASK marks.

    3.    **Chronicle's ASK IT Mark and Packaging Infringe Upon the Trade Dress Rights of the Go Ask Anyone Marks.**

" Trade dress " includes the total look of a product, its packaging and the design and shape of the product itself. Lanham Act, §43(a), 15 U.S.C.A. §1125(a). A company may prot its trade dress if the appearance of its product is nonfunctional and inherently distinctive or ha acquired secondary meaning in the eyes of consumers. *Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*, 259 F.3d 25, 38 (1st Cir. 2001). Go Ask Anyone's packaging for its products is nonfunctional and inherently distinctive due to the highly stylized design of the package, the distinctive nature of the word mark on each package, as well as the consistency of use of the design for each game in the line. Therefore, the Go Ask Anyone trad

dress is protectable under the Lanham Act. As the Chronicle trade dress for its Ask It produc[t] very similar to the Go Ask trade dress and the products are very similar, the Ask It trade dres[s] creating a likelihood of confusion with the already established GO ASK trade dress among consumers.

**B.     Go Ask Anyone Will Suffer Irreparable Harm If Chronicle Continues To Use Th[e] ASK IT Mark.**

" Likelihood of confusion due to the subsequent use of a confusingly similar mark by [its] very nature causes irreparable harm." *Home Sav. of America v. Home Sav. Ass'n.*, 219 U.S.P[.Q.] 157 (S.D. Tex. 1982). *See also Hasbro, Inv. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2nd Cir. 1988) (likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm); *Bayshore Group Ltd.*, 762 F. Supp. at 408 ("considerable authority exists fo[r] the view that the irreparable injury factor is satisfied once the plaintiff demonstrates that the defendant is wrongly trading on the plaintiff's reputation") (citing *Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir. 1986)).

Consumer confusion about the source of the parties' products sold under the respective marks diminishes the goodwill built up by Go Ask Anyone and therefore is a cause of irrepara[ble] harm. In addition, confusion by retailers who purchase products to sell to the public may caus[e] the most damage to Go Ask Anyone. The GO ASK and ASK IT companies are competing for product placement in the same venues. There is likelihood of confusion among retail buyers w[ho] are placing the product in their stores (either actual or online for sale). So, it is possible and probable that confusion of the products will prevent Go Ask Anyone's product from ever reaching the consuming public. As Chronicle has created a likelihood of confusion, actual confusion, and is trading on the hard-earned good will established by Go Ask Anyone in its

marks and products, Go Ask Anyone will be irreparably harmed if Chronicle is not immediately prevented from continuing to sell its product under the ASK IT name.

C.      **Balance Of The Equities Favors Go Ask Anyone**

As an initial matter, the potential harm to Chronicle warrants little consideration. As the First Circuit has explained in the analogous context of copyright infringement, " hardship that the defendant will suffer " because of " lost profits from an activity which has been shown to be infringing… .merits little equitable consideration." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (citation omitted). Nonetheless, as the Chronicle launched the ASK IT product only a few months ago, Chronicle will not suffer much harm in having to rename and relaunch the product. In addition, Defendants' most recent marketing blitz was done with full knowledge of the consequences.

D.      **Granting Injunctive Relief Will Serve the Public Interest**

The policy of trademark law is to protect parties that have a valid right to use a specific mark and to prevent consumer confusion. The First Circuit has recognized that providing trademarks with the greatest protection that can be given them serves the public interest because it allows the public to depend on the constancy of the quality of the goods its seeks. *Volkswagenwerk*, 814 F.2d at 820; *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F.Supp. 49, 51 (D. Mass. 1990) ( " public interest is served by promoting fair competition and preventing consumer confusion " ). In the instant case, public deception and confusion has resulted and will continue to result from Defendant's infringement conduct unless this Court enjoins Defendant's use of ASK IT in connection with conversation card games. " In light of the likelihood of confusion caused by the defendant's use of the name [ASK IT] and the similarity between the two trade marks, … the public interest is best served by the granting of [a] preliminary injunction against

19

defendant's use of the name and mark because the injunction will prevent further confusion between plaintiff's and defendant's [goods] in [Massachusetts]." *Horizon Financial*, 1987 U.S. Dist. LEXIS 643, at 35-36.

E. **No Bond Or Only A Nominal Bond Should Be Required.**

No bond or only a nominal bond should be required. *See Horizon Financial*, 1987 U.S. Dist. LEXIS 643, at 33 ($25,000 bond); *Comp Examiner Agency, Inc. v. Juris, Inc.*, 1996 WL 376600 (C.D. Cal. 1996) ($5,000 bond); *ActMedia, Inc. v. Active Media Intern, Inc.*, 1996 WL 466527 (N.D. Ill. 1996) (no bond); *Hotmail Corp. v. Van$ Money Pie, Inc.*, 47 U.S.P.Q. 2d 10 (N.D. Call. 1998) ($100 bond).

### IV. Conclusion

For the reasons stated, Go Ask Anyone respectfully requests that this Court issue an order in the form outlined in the Motion filed in connection with this Memorandum.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Go Ask Anyone requests an oral argument on this motion.

GO ASK ANYONE, INC.,

By its attorneys,

_____
Maureen Mulligan (BBO #556482)
Stacey Friends (BBO #647284)
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, Massachusetts 02114
(617) 742-4200

Dated: September 28, 2005

U:\MSM\Go Ask Anyone\Pleadings\MemoinSupportofMotionforPrelimInj (2).doc